**Michelle LAHMEYER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2311.**

Court of Appeals of Alaska.

Dec. 16, 1988.

---

Ray R. Brown, Asst. Public Defender, Ketchikan, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Michelle Lahmeyer was convicted, following a jury trial, of four counts of second-degree sexual abuse of a minor. AS 11.41.436(a)(2). Lahmeyer appeals her conviction. We affirm.

Michelle Lahmeyer lived part-time with M.M.'s family, and worked as a baby sitter, taking care of M.M.'s daughters, six-year-old T.M. and five-year-old H.M. M.M. worked on the evenings of September 11th, 12th, 13th, and 14th of 1986. Lahmeyer baby-sat for T.M. and H.M. on those evenings. A few days later, while M.M., T.M., and H.M. were watching a television program regarding sexual abuse, T.M. told her mother that "Michelle does that to me, Mommy." T.M. told her mother that Michelle had touched her "inside of her." T.M. originally told her mother that the touching occurred on six occasions, but later said that the touching occurred on four occasions. H.M. told her mother that she had seen the touching on one occasion.

Lahmeyer was indicted on four counts of sexual abuse of a minor in the second degree. Superior Court Judge Thomas E. Schulz presided over a jury trial, which was conducted in Ketchikan. At the trial, after describing the girls' initial complaint of sexual abuse, M.M. testified that she confronted Lahmeyer with the girls' allegations:

I just told her what [T.M.] told me and that I just asked her if she knew anything about it. And she said that she

would never do anything like that and that I was just going to have to trust her on this one. I just told her that I have to trust what my children tell me.

On cross-examination, defense counsel asked M.M. whether she had ever been in a position where T.M. and H.M. had not been trustworthy, to which M.M. said, "No." M.M. further testified that "I just can't remember a time when they have told such a lie that it's gotten [them] in trouble.... They tried to tell me that they didn't eat their dinner when they had.... I mean ... little teenie lies." The two girls then testified, and the state rested.

Out of the presence of the jury, the prosecutor advised Judge Schulz that the defense had subpoenaed M.M. Lahmeyer's attorney indicated that she wanted to ask M.M. about two specific instances where the children had lied to M.M. According to Lahmeyer's attorney, on one occasion the children had broken into the basement of a neighbor and had falsely denied breaking in. On another occasion, the children had falsely denied being the cause of a fire that occurred in the trees outside of their home. Lahmeyer argued that the testimony was relevant under Evidence Rule 404(a)(2) to establish the character of a victim. Lahmeyer argued that it was necessary to establish the children's character for untruthfulness. Lahmeyer also appears to have argued that it was necessary to show the specific instances of untruthfulness in order to impeach M.M.'s testimony that the children would tell small lies, but not big ones. In ruling against Lahmeyer, Judge Schulz concluded that under Rule 608, Lahmeyer could not show T.M.'s and H.M.'s character for untruthfulness by showing specific incidents. Judge Schulz also concluded that the specific incidents offered were of little probative value.

Evidence Rule 608 governs the admission of character evidence for truthfulness or untruthfulness.[1] Evidence Rule 608 (emphasis added) provides as follows:

---

**1.** Evidence Rule 404 is relevant to this inquiry only because that rule refers to the more specif-

ic rule, Evidence Rule 608. Evidence Rule 404 provides in pertinent part:

*Evidence of Character and
Conduct of Witness.*

(a) *Opinion and Reputation Evidence of Character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness; and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific Instances of Conduct. If a witness testifies concerning the character for truthfulness or untruthfulness of a previous witness, the specific instances of conduct probative of the truthfulness or untruthfulness of the previous witness, may be inquired into on cross-examination. Evidence of other specific instances of the conduct of a witness offered for the purpose of attacking or supporting that witness' credibility is inadmissible* unless such evidence is explicitly made admissible by these rules, by other rules promulgated by the Alaska Supreme Court or by enactment of the Alaska Legislature.

(c) *Admissibility.* Before a witness may be impeached by inquiry into specific instances of conduct pursuant to subdivision (b), the court shall be advised of the specific instances of conduct upon which inquiry is sought and shall rule if the witness may be impeached by such inquiry by weighing its probative value against its prejudicial effect.

(a) *Character Evidence Generally.* Evidence of a person's character or a trial of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . . .
(3) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.
The evidence rules commentary to Evidence Rule 608 states:
Rule 404(a) states the general proposition that character evidence is not admissible for the purpose of proving that a person acted in conformity therewith. That rule is subject to

■ Where a witness testifies to the character for truthfulness or untruthfulness of a previous witness, on direct examination the character witness may only testify as to his opinion of the previous witness' character for truthfulness or untruthfulness or to his knowledge of the previous witness' reputation for truthfulness or untruthfulness. Where a witness has testified as to the character of a primary witness on direct examination, on cross-examination the opposing party may inquire into specific acts of conduct of the primary witness in order to test the basis of the knowledge of the character witness. Therefore, under Rule 608, the character for truthfulness or untruthfulness cannot be established by showing specific instances of behavior. Specific instances of behavior to show truthfulness or untruthfulness are admissible only to show that the witness who testifies as to character does not have a solid basis for his opinion.

Under Evidence Rule 607, the credibility of a witness may be attacked by any party, including the party calling him.[2] However, the commentary to Evidence Rule 608, along with the plain language of Rule 608 itself, appears to prevent a party from inquiring of a character witness about the character of a primary witness as to truthfulness or untruthfulness, and then cross-examining the character witness based upon specific acts of the primary witness. The commentary provides:

Rule 607(a) permits either party to impeach a witness. This rule [608], however, limits inquiry into specific acts when testing the knowledge of character witnesses to cross-examination. The ra-

several exceptions, one of which is relevant here: character evidence may be admissible if it bears upon the credibility of a witness. This rule develops that exception.

**2.** Evidence Rule 607 provides:
(a) Subject to the limitation imposed by these rules, the credibility of a witness may be attacked by any party, including the party calling him.
(b) Evidence proffered by any party to support the credibility of a witness may be admitted to meet an attack on the witness' credibility.

tionale behind the limitation is to bar the direct examiner from the inquiry when "impeachment" of one's own witness becomes a disguise for using specific acts to prove character rather than the required reputation or opinion evidence. Because a party does have a choice as to character witnesses the need to impeach such witness by inquiring into specific acts should not arise.

Against this legal background, we will now analyze the present case. Lahmeyer first argues that M.M. testified as a character witness for her daughters. Consequently, Lahmeyer argues that she was entitled to cross-examine M.M. about specific instances of untruthfulness involving T.M. and H.M. In arguing that M.M. testified as a character witness, she points to the testimony where M.M. confronted Lahmeyer about molesting her children. When Lahmeyer said that she would never do anything like that and that M.M. was going to have to trust her, M.M. told Lahmeyer that she had to trust what her children told her. We do not believe that this testimony converted M.M. into a character witness on the truthfulness of her children. All the testimony does is relate M.M.'s conversation when she confronted Lahmeyer about molesting her daughters. M.M.'s statement that she would have to trust what her daughters told her does not establish T.M.'s character for truthfulness. Lahmeyer also points to the testimony that M.M. gave on cross-examination that "I just can't remember a time that they've told me such a lie that it's gotten [them] in trouble.... They tried to tell me they didn't eat their dinner when they had. I mean ... little teenie lies." However, Lahmeyer brought this testimony out on cross-examination. This seems to be the classic case which is discussed in the portion of the evidence rules commentary that we have previously quoted.

Under Evidence Rule 608, a party cannot make a witness a character witness for truth and veracity for the purpose of later cross-examining that witness by bringing out specific acts. There may be exceptional circumstances where the trial court should allow specific acts of untruthfulness to be used for purposes other than merely cross-examining a character witness for truth and veracity called by the other party. These exceptional circumstances, however, are not present in this case. We agree with Judge Schulz that the specific incidents alleged in the offer of proof—lying about causing a fire and about breaking into a neighbor's home—appear to be of minimal relevance. Given the apparent minimal relevance of these two incidents, we conclude that Judge Schulz did not err in forbidding Lahmeyer from recalling M.M. as a witness to testify about these two alleged incidents of untruthfulness by her daughters.

In a single paragraph at the end of her brief, Lahmeyer argues that the court's failure to allow her to examine M.M. regarding the two alleged incidents of untruthfulness violated her right to confront and to cross-examine witnesses under the sixth amendment to the United States Constitution. Lahmeyer admits that she did not raise this issue in the trial court. She asks us to find plain error. Lahmeyer has not cited any cases nor presented any arguments suggesting that the limitation on the use of specific acts of untruthfulness in Rule 608(b) is unconstitutional. We therefore conclude that Lahmeyer has not established plain error.

Lahmeyer's conviction is AFFIRMED.